UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: _____

**03-61980**

A&L ATLANTIS, LLC, H.K. ACORD, MARIE
ATTAWAY, ISAAC ATTIAS, SHIRLEY ATTIAS,
PAULYN BACIU, MARIELA ALEJANDRA BARBERIS,
LEE AH BEE, GITA BEHARRY, JUAN CARLOS BIZET,
ROMÁN FERNANDEZ BONOMI, BORA BORA
VENTURES, LIMITED, DEBORAH CHRISTEN-
DOMEDION, NANCY CONTRERAS, JOHN CORDISCO,
BARBARA CRANE, CYPRESS CREEK HOLDINGS
LTD., ADRIAN ENRIQUE DE FILIPPI, NATALIE
DIRUGERIS, PETER DIRUGERIS, WILLIAM
DIRUGERIS, EVEGER LLC, ARIEL GADEA, DAVID
GILBERT, DAVE GUIDICE, VIOLET GIUDICE, JOHN
D. GOGGINS TRUST BY AND THROUGH JOHN D.
GOGGINS, TRUSTEE, JOHN D. GOGGINS, ELLEN
GOLDENER, JOHN GOLDENER, KOPPELMAN-
GOLDSTEIN-ROBBINS FAMILY L.P., NOREEN
KOPPELMAN-GOLDSTEIN, CHAN YIU KEUNG, LEE
TZE KOON, MARTIN JAFFEE, PHYLLIS JAFFEE, TAN
SEK LIAN, LEEDON DEVELOPMENT CORPORATION,
DEBORAH L. LEVY, ED. D., ELLIOTT G. LEVY, M.D.,
JOHN TL LIM, ELISABETH ANN LOBO, JOHN LOBO,
BETTY MADEY, RICHARD MADEY TRUST BY AND
THROUGH RICHARD MADEY, TRUSTEE, RICHARD
MADEY, RONALD MADEY, NICHOLAS MANCINI,
ROCHELLE MANCINI, ULTAN MORAN, MICHAEL
MOYNIHAN, FRED R. NEIGHBORS, ROBERT D.
PELOQUIN, MARGARET S. PELOQUIN, POWER
PURSUIT LLC, MARIA MERCEDES PUYANA, AUDIE
M. ROLNICK, M.D., EILEEN IVERSON ROLNICK,
JOHN SCULLY, YVONNE SHIH, DEEPTAZ K. SIBIA,
HARDIAL SIBIA, MANJIT SIBIA, ROOPTAZ S. SIBIA,
SIRTAZ S. SIBIA, ARVIND K. SINGH, BALVINDER K.
SINGH, DEVINDER SINGH, HARINDERJIT SINGH,
M.D., JASLEEN SINGH, SURINDERJIT SINGH,
MAURICIO TANGIR, RAQUEL GRUNZWEIG DE
TANGIR, TECNODENT 508, CORP., CHARLES
VALENTINE, HERNÁN LOPEZ VERDE, LUCILLE
WALDMAN, FRANCES K. WERNER, and LEE LI YIN

CIV-COHN

MAGISTRATE JUDGE
SNOW

Plaintiffs,

v.

SPA ATLANTIS MANAGEMENT, LLC, CHAI
DEVELOPMENT, LLC, ASHLEY BLOOM, HOWARD
BLOOM, LEONARD GROSS, JOSHUA MINKIN,
CAROL MINKIN, and BARRY HALPERIN, AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF
MAURICE HALPERIN,

Defendants.
_____/



{MI936576;5}

**COMPLAINT**

Plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, Dave Giudice, Violet Giudice, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Chan Yiu Keung, Lee Tze Koon, Martin Jaffee, Phyllis Jaffee, Tan Sek Lian, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., John TL Lim, Elisabeth Ann Lobo, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin,  Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Charles Valentine, Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin, sue Defendants Spa Atlantis Management, LLC, Chai Development, LLC, Ashley Bloom, Howard Bloom, Leonard Gross, Joshua Minkin, Carol Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, and allege as follows:

## The Parties

### Plaintiffs

1.      A&L Atlantis, LLC is a Florida limited liability corporation with its principal place of business at 12365 SW 64 Avenue, Pinecrest, Florida.

2.      H.K. Acord is an individual with his residence in Wimberley, Texas.

3.      Marie Attaway is an individual with her residence in Augusta, Georgia.

4.      Isaac Attias is an individual with his residence in Fort Lauderdale, Florida.

5.      Shirley Attias is an individual with her residence in Fort Lauderdale, Florida.

6.      Paulyn Baciu is an individual with her residence in Hong Kong.

7.      Mariela Alejandra Barberis is an individual with her residence in Santa Fe, Argentina.

8.      Lee Ah Bee is an individual with his residence in Singapore.

9.      Gita Beharry is an individual with her residence in Pompano Beach, Florida.

10.     Juan Carlos Bizet is an individual with his residence in Santa Fe, Argentina.

11.     Román Fernandez Bonomi is an individual with his residence in Buenos Aires, Argentina.

12.     Bora Bora Ventures, Limited, is a British Virgin Islands corporation with its principal place of business at Sea Meadow House, Roadtown, Tortola, British Virgin Islands.

13.     Deborah Christen-Domedion is an individual with her residence in Tampa, Florida.

14.     Nancy Contreras is an individual with her residence in West Bend, Wisconsin.

15.     John Cordisco is an individual with his residence in Bristol, Pennsylvania.

16.     Barbara Crane is an individual with her residence in Washington, D.C.

17.     Cypress Creek Holdings Ltd. is a Texas limited partnership with its principal place of business in Wimberley, Texas.

18.     Adrian Enrique de Filippi is an individual with his residence in Santa Fe, Argentina.

19.     Natalie Dirugeris is an individual with her residence in Margate, Florida.

20.     Peter Dirugeris is an individual with his residence in Margate, Florida.

21.     William Dirugeris is an individual with his residence in Parkland, Florida.

22.     Eveger LLC is a Florida limited liability corporation with its principal place of business at 169 East Flagler Street, Suite 1534, Miami, Florida.

23.     Ariel Gadea is an individual with his residence in Buenos Aires, Argentina.

24.     David Gilbert is an individual with his residence in Washington, D.C.

25.     Dave Giudice is an individual with his residence in Middletown, New Jersey.

26.     Violet Giudice is an individual with her residence in Middletown, New Jersey.

27.     The John D. Goggins Trust is a trust whose trustee is John D. Goggins, an individual with his residence in Flint, Michigan.

28.     John D. Goggins is an individual with his residence in Flint, Michigan.

29.     Ellen Goldener is an individual with her residence in West Chester, Pennsylvania.

30.     John Goldener is an individual with his residence in West Chester, Pennsylvania.

31.     Koppelman-Goldstein-Robbins Family L.P. is an Ohio limited partnership with its principal place of business at 3687 Shepard Road, Perry, Ohio.

32.     Noreen Koppelman-Goldstein is an individual with her residence in Perry, Ohio.

33.     Chan Yiu Keung is an individual with his residence in Hong Kong.

34.     Lee Tze Koon is an individual with his/her residence in Singapore.

35.     Martin Jaffee is an individual with his residence in Delray Beach, Florida.

36.     Phyllis Jaffee is an individual with her residence in Delray Beach, Florida.

37.     Leedon Development Corporation is a Florida corporation with its principal place of business at 2875 Northeast 191st Street, Suite 801, Aventura, Florida.

38.     Deborah L. Levy, Ed. D., is an individual with her residence in North Miami, Florida.

39.     Elliott G. Levy, M.D., is an individual with his residence in North Miami, Florida.

40.     Tan Sek Lian is an individual with his/her residence in Singapore.

41.     John TL Lim is an individual with his residence in Singapore.

42.     John Lobo is an individual with his residence in Pinecrest, Florida.

43.     Betty Madey is an individual with her residence in Fort Lauderdale, Florida.

44.     Richard Madey Trust is a trust whose Trustee is Richard Madey, an individual with his residence in Ft. Lauderdale, Florida.

45.     Richard Madey is an individual with his residence in Fort Lauderdale, Florida.

46.     Ronald Madey is an individual with his residence in Newtown Square, Pennsylvania.

47.     Nicholas Mancini is an individual with his residence in Newtown, Pennsylvania.

48.     Rochelle Mancini is an individual with her residence in Newtown, Pennsylvania.

49.     Ultan Moran is an individual with his residence in Hong Kong.

50.     Michael Moynihan is an individual with his residence in Iselin, New Jersey.

51.     Fred R. Neighbors is an individual with his residence in Naples, Florida.

52.     Robert D. Peloquin is an individual with his residence in Fairfield, Pennsylvania.

53.     Margaret S. Peloquin is an individual with her residence in Fairfield, Pennsylvania.

54.     Power Pursuit LLC is a Florida limited liability corporation with its principal place of business at 1500 San Remo Avenue, Suite 177, Coral Gables, Florida.

55.     Maria Mercedes Puyana is an individual with her residence in Weston, Florida.

56.     Audie M. Rolnick, M.D. is an individual with his residence in Weston, Florida.

57.     Eileen Iverson Rolnick is an individual with her residence in Weston, Florida.

58.     John Scully is an individual with his residence in Elgin, Illinois.

59.     Yvonne Shih is an individual with her residence in Singapore.

60.     Deeptaz K. Sibia is an individual with his/her residence in Boca Raton, Florida.

61.   Hardial Sibia is an individual with his residence in Boca Raton, Florida.

62.   Manjit Sibia is an individual with her residence in Boca Raton, Florida.

63.   Rooptaz S. Sibia is an individual with his/her residence in Boca Raton, Florida.

64.   Sirtaz S. Sibia is an individual with his/her residence in Boca Raton, Florida.

65.   Arvind K. Singh is an individual with her residence in Augusta, Georgia.

66.   Balvinder K. Singh is an individual with her residence in Augusta, Georgia.

67.   Devinder Singh is an individual with his residence in Fort Lauderdale, Florida.

68.   Harinderjit Singh, M.D., is an individual with his residence in Augusta, Georgia.

69.   Jasleen Singh is an individual with her residence in Augusta, Georgia.

70.   Surinderjit Singh is an individual with his residence in Augusta, Georgia.

71.   Mauricio Tangir is an individual with his residence in Buenos Aires, Argentina.

72.   Raquel Grunzweig de Tangir is an individual with her residence in Buenos Aires, Argentina.

73.   Tecnodent 508, Corp., is a Florida corporation with its principal place of business at 2588 S.W. 27th Avenue, Miami, Florida.

74.   Charles Valentine is an individual with his residence in Nashua, New Hampshire.

75.   Hernán Lopez Verde is an individual with his residence in Buenos Aires, Argentina.

76.   Lucille Waldman is an individual with her residence in Pompano Beach, Florida.

77.   Frances K. Werner is an individual with her residence in Pompano Beach, Florida.

78.   Lee Li Yin is an individual with his/her residence in Singapore.

**Defendants**

79.     Spa Atlantis Management, LLC ("Spa Atlantis") is a Florida limited liability corporation with its principal place of business at 1350 North Ocean Boulevard, Pompano Beach, Florida 33062. *Spa Atlantis currently is the subject of an involuntary bankruptcy proceeding in the Southern District of Florida, Case No. 03-26809-BKC-RBR. Plaintiffs file their claims against Spa Atlantis herein in order to preserve such claims and to file them well within the limitations period; such claims will be stayed during the pendency of the bankruptcy.*

80.     Chai Development, LLC ("Chai") is a Florida limited liability corporation with its principal place of business at 1350 North Ocean Boulevard, Pompano Beach, Florida 33062 .

81.     Ashley Bloom ("A. Bloom") is an individual.  Upon information and belief, his residence is at 6584 Villa Sonrisa Drive, Apt. 1123, Boca Raton, Florida 33433.

82.     Howard Bloom ("H. Bloom") is an individual.  Upon information and belief, his residence is at 12601 Eagle Trace Boulevard, N., Coral Springs, Florida 33071.

83.     Leonard Gross ("Gross") is an individual.  Upon information and belief, his residence is at 2671 S. Course Drive, Pompano Beach, Florida 33069.

84.     Joshua Minkin ("J. Minkin") is an individual.  Upon information and belief, his residence is at 4405 Woodfield Boulevard, Boca Raton, Florida 33434.

85.     Carol Minkin ("C. Minkin") is an individual.  Upon information and belief, her residence is at 4405 Woodfield Boulevard, Boca Raton, Florida 33434.

86.     Barry Halperin, Personal Representative of the Estate of Maurice Halperin, is an individual.  Upon information and belief, his residence is at 6924 Queenferry Circle, Boca Raton, Florida 33496.  Maurice Halperin was the father of C. Minkin.

## Jurisdiction and Venue

87.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v(a). Jurisdiction of this Court is specifically conferred by the Securities Act, 15 U.S.C. § 77v(a), and also is predicated upon the existence of a federal question and the principles of pendent jurisdiction.

88.     The venue of this action is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district and all of the property that is the subject of this action is situated in this district. Defendants are subject to personal jurisdiction in this district and, therefore, reside in this district for purposes of venue.

## Factual Allegations

89.     Upon information and belief, starting in or around July 1999, units in the Spa Atlantis Ocean Resort, a condominium hotel located at 1350 North Ocean Boulevard, Pompano Beach, Florida 33062 ("Resort"), were offered for sale to the general public, throughout the United States and overseas, pursuant to advertising, sales literature, promotional schemes and/or oral representations.

90.     The Resort is a 10-story high-rise building with a total of 104 units:  89 residential units and 15 commercial units (collectively, "Units"). The Residential Units in the Resort were constructed to be used for transient and/or hotel rentals.

91.     Chai is the owner of the unsold Units that were and are being offered for sale to the general public, and Spa Atlantis has been managing the Resort since its inception. A. Bloom, H. Bloom, Gross, J. Minkin and C. Minkin are, or have been, members and/or officers of Chai and Spa Atlantis at times material hereto. Gross had day-to-day responsibility for directing the creation and sale of the Resort at all times material hereto. C. Minkin is the Managing Member of Spa Atlantis

and has been managing the Resort since its inception.  Upon information and belief, C. Minkin has no prior experience managing a hotel/resort operation.

92.     At all times material hereto, defendants were engaged in a de facto partnership for the development, marketing, sale and management of the Resort.

93.     At all relevant times, officers, agents, employees, and representatives of Spa Atlantis have acted on behalf of Chai and *vice versa* without differentiating in which capacity they acted, such that acts and representations by any such officer, agent, employee, or representative serve to bind both Spa Atlantis as well as Chai.

94.     Chai and Spa Atlantis engaged in a program of offering to sell Units to third parties, coupled with an offer or agreement to arrange certain rental or other services for the purchaser. Specifically, defendants offered the Units to the general public in conjunction with an offer to lease the Units for a guaranteed rate of return.  One advertisement touted the project as *"The Best Investment Property Ever Heard."*

95.     Defendants' plan for the Resort was described in a letter dated October 10, 2002, from C. Minkin, Spa Atlantis' Managing Member, to the "Unit Owners of Spa Atlantis Resort." In that letter, C. Minkin stated that

> [T]he original contemplated operation of the Spa Atlantis Resort centered around the successful operation of the hotel and spa facility. Unit purchasers acquired their condominium units and simultaneously entered into a lease with Spa Atlantis Management, LLC. The rental income to the unit owners was to offset any debt service inured by the unit owner in conjunction with the acquisition of the unit.  Spa Atlantis Management, LLC would meet its obligation from the cash flow created by the hotel operations.

96.     Consistent with defendants' plan for the operation of the Resort, at each closing for the Units, Spa Atlantis concurrently entered into lease back agreements with the new Unit owners. The lease back agreements promised a guaranteed rate of return, through purported rental income, for a specified period.  The sale and lease back of the Units thus constituted a securities offering to the

public at large. *See* The United States Securities and Exchange Commission's statement to builders and sellers of condominiums of their obligations under the Securities Act, 1973 SEC LEXIS 3277 (January 18, 1973).

97.     The new Unit owners were led to expect profits from their purchase of the Unit solely from the efforts of defendants. For example, the lease back agreements provided that all leasing activities were to be undertaken by Spa Atlantis, and that Spa Atlantis had sole discretion over the rental terms and conditions. By way of further example, in addition to the rental income guaranteed to the new Unit owners, Spa Atlantis contracted to pay the annual condominium maintenance assessment for the Unit, real property taxes associated with the Unit, all utilities, maintenance of the Unit, and all repairs. Spa Atlantis further had the sole right to select and acquire furnishings it alone deemed suitable and necessary for the operation of the Unit as a hotel unit or short term rental property.

98.     The plaintiffs purchased Units in the Resort pursuant to transactions that closed in 2002, and concurrently entered into lease back agreements with Spa Atlantis (the "Leases"), as described above. The Leases provided for "guaranteed" annual returns, which were set forth in the Leases or on a cover page attached to "Standard Lease Terms and Conditions." The Leases were for varying lengths of time, and promised monthly payments for as little as two years or as long as ten years. The final Leases, executed at each of the plaintiffs' closings, were a different form than the proposed "Rental Lease Agreement" provided to investors prior to closing. A true and correct copy of the "Standard Lease Terms and Conditions" is attached hereto as Exhibit "A."

99.     In or around July 2002, C. Minkin represented to certain of the plaintiffs that the Resort would be profitable. She advised at least one investor, "don't worry; the property will be a success and you'll get your money."

100.    The Resort began operating in early 2002. As of October 2002, more than two-thirds of the Units were sold.

101.    Inexplicably, in or around December 2002, Spa Atlantis stopped paying all Unit owners their monthly lease back rental fees. *Since that date, Spa Atlantis has not paid one dime to the plaintiffs*, notwithstanding the fact that the Resort has had significant occupancy at times since then. Spa Atlantis's failure to make these required payments also comes at a time when the lodging industry in South Florida has performed very well, with most comparable properties experiencing high occupancy and profitability.

102.    Spa Atlantis management has not provided any accounting to the plaintiffs to explain the financial performance of the Resort. On information and belief, the Resort has been profitable, but defendant C. Minkin and Maurice Halperin have kept all the profits for themselves, to the exclusion of the plaintiffs and other investors in the Resort.

103.    On information and belief, Chai has at all time material hereto continued to own approximately 28 residential units in the Resort, which it has offered for sale to the public. On information and belief, Chai also continues to own all of the "commercial units" in the Resort, including the Spa, restaurant, gift shop, and recreation facilities. On information and belief, Chai obtained title to the units owned by it without payment of any funds, as funds from the plaintiffs and other investors were used to pay for construction of the Resort and to satisfy all previously outstanding construction loans. As a result, Chai obtained its ownership interest in the Resort through the fraud complained of herein.

104.    The Resort is governed by condominium documents that provide that investors other than the developer have the right to elect at least one third of the board of directors when more than 15% of the units have been sold to someone other than the developer (i.e., Chai). That threshold was triggered in the fall of 2002, at the latest, but as of this date C. Minkin, Chai, and Spa Atlantis have

failed to adhere to the governing documents of the condominium association by expanding the board of directors. On information and belief, C. Minkin remains the sole director of the condominium association.

105. All conditions precedent to this action have occurred or have been waived.

## COUNT I
### Action pursuant to Section 12(a) of the Securities Act
### (Against Chai and Spa Atlantis)

106. The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

107. This Count is brought only on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Lee Tze Koon, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin.

108.    Chai's offer to sell Units coupled with Spa Atlantis' offer to lease them back constituted a securities offering to the public at large. *See* The United States Securities and Exchange Commission's statement to builders and sellers of condominiums of their obligations under the Securities Act, 1973 SEC LEXIS 3277 (January 18, 1973).

109.    The new Unit owners investment in the Resort were and are "securities" because with respect to each transaction, the parties (1) entered into a contract to purchase Units (2) in a common enterprise, (3) coupled with a lease back agreement (4) that led the Unit owners to expect profits solely from the efforts of Spa Atlantis. *See Securities and Exchange Commission v. Howey,* 328 U.S. 293 (1946).

110.    As a securities offering, the sale of Units was required to be registered pursuant to Section 5 of the Securities Act, 15 U.S.C. § 77e.

111.    At the time of the sales of Units to plaintiffs and thereafter, Chai and Spa Atlantis failed to register the securities offering in violation of Section 5 of the Securities Act.

112.    By selling the Units and entering into lease back agreements, Chai and Spa Atlantis have engaged in the regular and not isolated unlawful sale of unregistered securities to plaintiffs in violation of Section 5 of the Securities Act.

113.    Chai and Spa Atlantis are liable to plaintiffs under Section 12 of the Securities Act for the sale of unregistered securities in violation of Section 5 of the Securities Act.

114.    Plaintiffs continue to own the Units they purchased from Chai and leased back to Spa Atlantis.

115.    Plaintiffs are entitled to a rescission of the purchase of their various Units and a refund of the consideration paid to Chai by each plaintiff, plus interest at the legal rate from the date of purchase pursuant to Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a).    Accordingly, plaintiffs tender the Units.

116.    Plaintiffs have retained the undersigned law firm to bring this claim and are obligated to pay the firm reasonable attorneys' fees for the firm's services.

WHEREFORE, plaintiffs demand judgment against Chai and Spa Atlantis for rescission of the purchase agreements for each Unit purchased by plaintiffs, refund of the consideration paid to Chai by each plaintiff, plus pre-judgment interest from the date of purchase, post-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

**COUNT II**
**Action pursuant to Section 15 of the Securities Act**
**(Against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as**
**Personal Representative of the Estate of Maurice Halperin)**

117.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

118.    This Count is brought against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, John Cordisco, Nancy Contreras, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully,

Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin. This Count is brought against Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, only, by plaintiffs Dave Giudice, Violet Giudice, Chan Yiu Keung, and Charles Valentine.

119.    By virtue of their office, directorship and specific acts, A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Maurice Halperin were, at the time of the wrongs alleged herein, each controlling persons of Chai and Spa Atlantis within the meaning of Section 15 of the Securities Act, 15 U.S.C. § 77o.

120.    A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin and Maurice Halperin knowingly or recklessly used their power and authority to cause Chai and Spa Atlantis to engage in the illegal conduct and practices complained of herein by causing Chai and Spa Atlantis to engage in the sale of unregistered securities to plaintiffs.

121.    By reason of the conduct alleged in Count I against Chai and Spa Atlantis, and because of their status as controlling persons, defendants A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, are liable to plaintiffs under Section 15 of the Securities Act.

WHEREFORE, plaintiffs demand judgment against defendants A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, for rescission of the purchase agreements for each Unit purchased by plaintiffs, refund of the consideration paid to Chai by each plaintiff, plus pre-judgment interest from the date of purchase, post-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

## COUNT III
## <u>Action pursuant to Florida Statute Chapter 517</u>
### (Against all defendants)

122.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

123.    This Count is brought against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin.  This Count is brought against Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, only, by plaintiffs Dave Giudice, Violet Giudice, Chan Yiu Keung, and Charles Valentine.

124.   Chai's offer to sell Units coupled with Spa Atlantis' offer to lease them back constituted a securities offering to the public at large.

125.   As a securities offering, the sale of Units was required to be registered pursuant to Fla. Stat. § 517.07.

126.   Chai and Spa Atlantis failed to register the securities offering in violation of Fla. Stat. § 517.07.

127.   By selling the Units and entering into lease back agreements, Chai and Spa Atlantis have engaged in the regular and not isolated unlawful sale of unregistered securities to plaintiffs in violation of Fla. Stat. Chapter 517.

128.   Upon information and belief, A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Maurice Halperin have personally participated or aided in selling Units to plaintiffs. Defendants A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, are thus liable to plaintiffs for actions taken by Chai and Spa Atlantis pursuant to Fla. Stat. § 517.211(1).

129.   Plaintiffs continue to own the Units they purchased from Chai and leased back to Spa Atlantis.

130.   Plaintiffs are entitled to a rescission of the purchase of their various Units and a refund of the consideration paid to Chai by each plaintiff, plus interest at the legal rate from the date of purchase. Accordingly, plaintiffs tender the Units.

131.   Plaintiffs have retained the undersigned law firm to bring this claim and are obligated to pay the firm reasonable attorneys' fees for the firm's services.

132.   Plaintiffs are entitled to recover their reasonable attorneys' fees pursuant to Fla. Stat. § 517.211(6).

WHEREFORE, plaintiffs demand judgment against defendants for rescission of the purchase agreements for each Unit purchased by plaintiffs, refund of the consideration paid to Chai by each plaintiff, plus pre-judgment interest from the date of purchase, post-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

**COUNT IV**
**Breach of Contract In the Alternative**
**(Against Spa Atlantis)**

133. The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

134. This Count is brought only on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel

Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin.

135.    This count is pled in the alternative.

136.    Spa Atlantis entered into Leases with plaintiffs that provided for monthly rental payments in exchange for leasing the Units to be used as hotel rooms.

137.    In or around December 2002, Spa Atlantis materially breached the Leases when it stopped paying plaintiffs their monthly lease back rental fees.

138.    As a result of Spa Atlantis' breach of contract, plaintiffs have been damaged.

139.    Plaintiffs have retained the undersigned law firm to bring this claim and are obligated to pay the firm reasonable attorneys' fees for the firm's services.

WHEREFORE, each plaintiff demands judgment against Spa Atlantis in an amount in excess of $75,000, together with pre- and post-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

**COUNT V**
**Breach of Fiduciary Duty**
**(Against J. Minkin and C. Minkin)**

140.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

141.    This Count is brought only on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation,

Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin.

142.   Spa Atlantis entered into Leases with plaintiffs that obligate Spa Atlantis to provide plaintiffs with guaranteed monthly rental income generated solely from Spa Atlantis' operation and management of the Resort.

143.   J. Minkin and C. Minkin are the "Managing Members" of Spa Atlantis, and are actively involved in the day-to-day management of the Resort.  Upon information and belief, J. Minkin and C. Minkin have no prior experience operating a hotel or resort property.

144.   As the Managing Members of Spa Atlantis, J. Minkin and C. Minkin owe plaintiffs a duty of care as a fiduciary.  J. Minkin and C. Minkin have breached this duty

     (a) by failing to manage the Resort in a profitable fashion;

     (b) by failing to hire professional managers with relevant experience;

     (c) by hiring too many workers, thus incurring unnecessary cost and expense;

     (d) by hiring Janus, a hotel management company, and continuing to pay Janus, even though Janus has been banned from the Resort;

     (e) by failing to furnish all Units leased from plaintiffs pursuant to the Leases;

     (f) by failing to make the entire pool of Units available for rental; and

(g) by failing to properly advertise the Resort.

145.    As a result of J. Minkin and C. Minkin's breaches of fiduciary duty to plaintiffs, each plaintiff has been damaged in excess of $75,000 in addition to pre-judgment interest, attorneys' fees and costs.

WHEREFORE, each plaintiff demands judgment against defendants J. Minkin and C. Minkin in an amount in excess of $75,000, together with pre-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

**COUNT VI**
**Accounting**
**(against Spa Atlantis)**

146.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

147.    This Count is brought only on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia,

Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin.

148.    Spa Atlantis is obligated to pay rental income to plaintiffs for each leased Unit, including annual condominium maintenance assessments for each Unit, real property taxes associated with each Unit, all utilities, maintenance and all repairs for each Unit.

149.    Spa Atlantis has failed to pay the sums due to plaintiffs pursuant to the Leases and has refused to make an accounting.

150.    Spa Atlantis' failure to make an accounting and pay over the sums due has damaged plaintiffs.

WHEREFORE, plaintiffs request entry of an order requiring defendant Spa Atlantis to submit an accounting of its operations, including, without limitation, its general ledger, all accounts receivable and accounts payable, and granting any further relief that the Court deems appropriate.

### COUNT VII
### Action pursuant to Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

151.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

152.    This Count is brought against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through

John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Jasleen Singh, Harinderjit Singh, M.D., Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin. This Count is brought against Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, only, by plaintiffs Dave Giudice, Violet Giudice, Chan Yiu Keung, and Charles Valentine.

153.    Maurice Halperin was a member and/or officer of Chai and Spa Atlantis at all times material hereto. In 1991, Halperin was sanctioned by the SEC, fined $50,000, and permanently enjoined by the U.S. District Court for the District of Columbia from future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

154.    Defendant H. Bloom was also a member and/or officer of Chai and Spa Atlantis at all times material hereto. In 1990, H. Bloom was convicted for tax fraud for bribing an Internal Revenue Service agent to fix his delinquent federal income taxes. H. Bloom was released from federal prison on June 28, 1995.

155.    Each of the defendants knew or recklessly disregarded material adverse information that Halperin was sanctioned by the SEC and prohibited from promoting securities, and that H.

Bloom was jailed for tax fraud. These material facts were never disclosed to plaintiffs in the marketing, sale and/or lease of the Units.

156.    With knowledge of or reckless disregard for the truth, defendants failed to provide prospective and actual purchasers of the Units with the information on the background of their members and/or officers that would allow the individual investors to accurately assess the risk factors involved in purchasing Units from Chai and concurrently leasing them back to Spa Atlantis.

157.    Defendants have violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder in that they directly or indirectly made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.

158.    Plaintiffs have suffered damage in that, in reliance on the statements made by defendants, they purchased Units at the Resort. Plaintiffs would not have purchased Units at the Resort, or would not have purchased Units on the terms on which they were sold, had they known that Chai and Spa Atlantis' members, officers, or principals had been previously sanctioned by the SEC and prohibited from selling securities, or jailed for tax evasion.

WHEREFORE, each plaintiff demands judgment against defendants in an amount in excess of $75,000, together with pre-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

## COUNT VIII
### Action pursuant to Section 20(a) of the Exchange Act
**(Against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, Personal Representative of the Estate of Maurice Halperin)**

159.    The allegations of paragraphs 1 through 105 are incorporated herein and realleged.

160.    This Count is brought against A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin on behalf of plaintiffs A&L Atlantis, LLC, H.K. Acord, Marie Attaway, Isaac Attias, Shirley Attias, Paulyn Baciu, Mariela

Alejandra Barberis, Lee Ah Bee, Gita Beharry, Juan Carlos Bizet, Román Fernandez Bonomi, Bora Bora Ventures, Limited, Deborah Christen-Domedion, Nancy Contreras, John Cordisco, Barbara Crane, Cypress Creek Holdings Ltd., Adrian Enrique de Filippi, Natalie Dirugeris, Peter Dirugeris, William Dirugeris, Eveger LLC, Ariel Gadea, David Gilbert, John D. Goggins Trust by and through John D. Goggins, Trustee, John D. Goggins, Ellen Goldener, John Goldener, Lee Tze Koon, Koppelman-Goldstein-Robbins Family L.P., Noreen Koppelman-Goldstein, Martin Jaffee, Phyllis Jaffee, Leedon Development Corporation, Deborah L. Levy, Ed. D., Elliott G. Levy, M.D., Tan Sek Lian, John TL Lim, John Lobo, Betty Madey, Richard Madey Trust by and through Richard Madey, Trustee, Richard Madey, Ronald Madey, Nicholas Mancini, Rochelle Mancini, Ultan Moran, Michael Moynihan, Fred R. Neighbors, Robert D. Peloquin, Margaret S. Peloquin, Power Pursuit LLC, Maria Mercedes Puyana, Audie M. Rolnick, M.D., Eileen Iverson Rolnick, John Scully, Yvonne Shih, Deeptaz K. Sibia, Hardial Sibia, Manjit Sibia, Rooptaz S. Sibia, Sirtaz S. Sibia, Arvind K. Singh, Balvinder K. Singh, Devinder Singh, Harinderjit Singh, M.D., Jasleen Singh, Surinderjit Singh, Mauricio Tangir, Raquel Grunzweig de Tangir, Tecnodent 508, Corp., Hernán Lopez Verde, Lucille Waldman, Frances K. Werner, and Lee Li Yin. This Count is brought against Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, only, by plaintiffs Dave Giudice, Violet Giudice, Chan Yiu Keung, and Charles Valentine.

161. Defendants A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin and Maurice Halperin acted as controlling persons of Chai and/or Spa Atlantis within the meaning of Section 20(a) of the Exchange Act. By reason of their ownership of and positions with Chai and Spa Atlantis, participation in and/or awareness of Chai's and Spa Atlantis' operations, and/or intimate knowledge of the false and misleading information disseminated to the investing public, these defendants had the power and authority to cause Chai and Spa Atlantis to engage in the wrongful conduct complained of herein, and did influence and control, directly or indirectly, the decision-making of

Chai and Spa Atlantis, including the content and dissemination of the statements which plaintiffs contend are false and misleading. These defendants had the ability to prevent the issuance of false and misleading statements regarding the background of their members and/or officers that would allow the individual investors to accurately assess the risk factors involved in purchasing Units from Chai and concurrently leasing them back to Spa Atlantis.

162.    As set forth above, defendants violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in the Complaint. By virtue of their positions as controlling persons, defendants A. Bloom, H. Bloom, Gross, J. Minkin, C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, plaintiffs suffered damages in connection with their purchases of Units at the Resort.

WHEREFORE, each plaintiff demands judgment against defendants A. Bloom, H. Bloom, Gross, J. Minkin C. Minkin, and Barry Halperin, as Personal Representative of the Estate of Maurice Halperin, in an amount in excess of $75,000, together with pre-judgment interest, the costs associated with bringing this action, including reasonable attorneys' fees, and any further relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims triable by jury.

Respectfully submitted,

Date: November 4, 2003

**AKERMAN SENTERFITT**
SunTrust International Center
One Southeast Third Avenue - 28th Floor
Miami, Florida 33131-1704
Phone: 305-374-5600
Fax: 305-374-5095

By: _____
Brian P. Miller
Florida Bar No.: 0980633
E-mail: bmiller@akerman.com
Samantha J. Kavanaugh
Florida Bar No.: 0194662
E-mail: skavanaugh@akerman.com

# EXHIBIT "A"

# Standard Lease Terms and Conditions

1. **Demise:**     Unit Owner hereby leases the Property to the Operator and the Operator takes the Premises from the Unit Owner to be used and occupied as a hotel suite or short term rental residence, or for any other lawful use.

2. **Term:**     The initial Term of this Lease shall be for the  initial lease term stated above, commencing on execution of this Lease or the acquisition by Unit Owner of the title to the Unit, whichever occurs later, unless sooner terminated as provided herein, subject to the terms and conditions of this Lease. In the event that this Lease is executed prior to the closing of the Unit Owner's acquisition of the Unit, then this Lease shall be contingent upon such acquisition of title.  .

3. **Rent:**     Operator agrees to pay to Unit Owner as Rent for the Premises without previous demand an annual base rental as stated above, payable in monthly installments on the first day of each and every month commencing one month plus the number of days to the end of the calendar month after the closing of the Unit Owner's acquisition of the Premises, payable at the Unit Owner's address set forth above, or at such other address as the Unit Owner may designate.

4. **Operating Expenses:**   The Operator shall pay, in additional to base rent:
   a.     The annual condominium maintenance assessment assessed against the Premises by the condominium association.  Operator shall have the right to pay  these charges directly, in which case Operator shall provide proof of  payment thereof to Unit Owner before such charges become delinquent.

   b.     The real property taxes payable with respect to the Premises. Operator shall have the right to pay these charges directly, in which case Operator shall provide proof of  payment thereof to Unit Owner before such charges become delinquent.  In the event that any Mortgagee requires a monthly escrow for the payment of real estate taxes, Operator shall pay such taxes to Unit Owner month together with the monthly installment of base rent.

   c.     All utilities, maintenance of the unit; and all repairs.

The  Unit Owner shall pay all payments on any mortgage encumbering the Premises. In the event that Unit Owner defaults in the payment of such mortgage, Operator shall have the right to deduct from the rent due to Unit Owner any amount due to the mortgagee and pay same to the mortgagee.

5. **Subleasing:**     Operator shall have the right to rent the Premises to occupants for hotel or other short term rental, upon such terms and conditions acceptable to Operator in Operator's sole discretion. This right of short term letting shall extend to and include the right to contract  with others to provide a definite period of time per year for a multitude of years and to receive a discounted payment in advance for such a conveyance. By execution hereof, Unit Owner agrees to subordinate its right of ownership and to not disturb the holders of such multi-year, fixed period occupancy agreements.  Operator shall not enter into any sub-lease which extends beyond the term of this Lease without the express written agreement of Unit Owner. Notwithstanding the foregoing, a permitted sub-lease shall extend beyond the termination of this Lease if this Lease is terminated by Unit Owner for just cause prior to its agreed term.

6. **Rules and Regulations:** The parties acknowledge that this Lease and the use of the Premises is subject to the Declaration of Condominium of SPA ATLANTIS RESORT CONDOMINIUM, a Condominium Hotel, as the same may be amended from time to time, and subject to the rules and regulations of the condominium association thereunder.

7. **Furnishings Package:** The Parties hereby agree that Operator shall be responsible for the selection and acquisition of furnishings deemed suitable and necessary by Operator for the operation of the Premises as a hotel unit or short term rental property.  Operator shall have the option to lease or otherwise finance all or any portion of such furnishings. Unit Owner agrees that such furnishings shall remain the property of the Operator, subject to any lease or other financing and Unit Owner hereby waives any statutory Unit Owners lien upon such furnishings.

2

8.   .   **Unit Owner's Access:** The Unit Owner shall have reasonable access to the Premises, provided the Operator or the occupants are not disturbed by such access. The Unit Owner shall schedule any such access to the Premises through Operator or Operator's representative at least 24 hours in advance.

9.    **Unit Owner's Personal Use Time:**    Unit Owner shall have the right to reserve the Unit from time to time for Unit Owner's own use or for use by Unit Owner's relatives or guests ("Personal Use Time"), subject to the following limitations and requirements:

    a.     Unit Owner shall be entitled each year during the term hereof to Personal Use Time during "High season" and/or during "Low season" as set forth on Page one of this Lease.

    b.     At Unit Owner's option, Unit Owner shall be entitled to exchange one week of High Season Personal Use Time (if any) each year for two weeks of Low Season Personal Use Time.

    c.     Unit Owner shall be required to give not less than thirty (30) days notice of such intended Personal Use Time use.

    d.     "High season" includes the period of December 15th through April 15th each year; and "Low season" includes the period of April 16th through December 14th each year.

    e.     Unit Owner agrees that Operator shall have the right to substitute a unit of equal or greater size to satisfy Unit Owner's right of occupancy. The use of the Premises is not guaranteed.

    f.     During Personal Use Time, Unit Owner shall have access to Spa Atlantis (the "Spa") and the facilities thereof on the same basis as any other Hotel guest; provided, however that:
        i.     Standard Spa Meals [as defined by the Spa from time to time] shall be included at no additional charge; and
        ii.     Additional food items shall be charged for on an a la carte basis at the Spa's standard rates.
        iii.     Unit Owner shall be required to pay miscellaneous and imposed expenses including but not limited to gratuities, taxes, laundry, housekeeping, telephone charges, computer [in-room, if available] and related internet charges, and spa services, as well as the cost of any services requested and provided.

10.    **Unit Owner's Hotline Use Time:**    In addition to Personal Use Time, Unit Owner shall have the right to reserve the Unit from time to time for Unit Owner's own use or for use by Unit Owner's relatives or guests ("Hotline Use Time"), subject to the following limitations and requirements:

    a.     The Spa Atlantis "Hotline" shall refer to a special reservation service available to unit owners for the purpose of making reservations on short notice.

    b.     Units available through the Hotline may include any unit at the Hotel. Accommodations are not guaranteed in the Premises or in any particular unit.

    c.     Accommodations will be considered "available" for the purposes of the Hotline Use Time if the total occupancy of the Resort for the requested time period is projected to be less than seventy-five percent (75%) of those units available to Operator for rental   and the particular type of accommodations requested are not then reserved to others.

    d.     Unit Owner shall have the right to rent for its own use a Unit at the Hotel with not more than seven (7) days advanced notice at fifty percent (50%) off of published room rates, on an "as available" basis.

e.  Unit Owner shall have the right to rent for its own use a Unit at the Hotel with not more than forty-eight (48) hours advanced notice at ZERO percent (0%) of published room rates (i.e., at no charge to room rent), on an "as available" basis for a maximum stay of the lesser of:

(1)  seven (7) days or

(2)  until the Sunday following commencement of occupancy if the apartment is reserved for occupancy on that Sunday (it being acknowledged by the parties that standard Spa program occupancy runs from Sunday to Sunday).

f.  Unit Owner may not schedule Hotline Use Time for more than two consecutive weeks.

g.  During Hotline Use Time, Unit Owner shall have access to Spa Atlantis (the "Spa") and the facilities thereof on the same basis as any other Hotel guest; provided, however that:

i.  Spa meals shall be available to Unit Owner on an a la carte basis at the Spa's standard rates.

ii.  Unit Owner shall be required to pay miscellaneous and imposed expenses including but not limited to gratuities, taxes, laundry, housekeeping, telephone charges, computer [in-room, if available] and related internet charges, and spa services, as well as the cost of any services requested and provided

11.  **Risk of Loss-Casualty:**    In the event the Premises are destroyed or damaged by fire or other casualty during the term of this Lease, such as to render the Premises untenantable, then the rent obligation shall abate during the re-building of the Premises. Provided that insurance proceeds are available, Operator, at its election, shall exclusively be responsible for the re-building of the Premises and shall do so with due diligence. Operator exclusively shall have the right to cancel this Lease in the event it elects not to re-build or to continue this Lease.

12.  **Operator Defaults.**    Each of the following events shall be an "Event of Default" under the terms of this Lease:

a.  Failure of Operator to pay any installment of rent or any part thereof, or to make any other payments of money, costs or expenses within ten (10) business days after  written notice of non-payment;

b.  Failure to observe or perform any of the terms, conditions, covenants or agreements contained in this Lease within thirty (30) days after  written notice of such failure, unless the cure thereof is commenced within said thirty days and Operator is diligently pursuing such cure;

13.  **Force Majeure.** The provisions of this Section shall be applicable if there shall occur, during the lease term, or prior to the commencement thereof, any (i) strike, lockout or labor disputes; (ii) inability to obtain labor or materials or reasonable substitutes therefor or (iii) acts of God, governmental restrictions, regulations or controls, enemy or hostile governmental action, terrorist act, substantial economic downturn constituting a "depression" as defined by applicable governmental standards, continuing economic downturn constituting a "recession" as defined by applicable governmental standards which continues for three or more months, substantial industry wide (i.e., tourism and/or hotel industry) economic downturn affecting South Florida which continues for three or more months, civil commotion, fire or other casualty or other conditions similar or dissimilar to those enumerated in this item, which is or are beyond the reasonable control of the party obligated to perform. If Unit Owner or Operator shall, as a result of any of the above described events, fail punctually to perform any obligation on its part to be performed under this Lease, including, but not limited to, the payment of rent, then such failure shall be excused and not be a breach of this Lease by the party in question, but only to the extent occasioned by such event. If any right or option of any party to take any action under or with respect to this Lease is conditioned upon the same being exercised within any prescribed period of time or at or before a named date, then such prescribed period of time and such named date shall be deemed to be extended or delayed, as the case may be, for a period equal to the period of the delay occasioned by any above described event.

14.  **Unit Owner's Remedies:**    Upon an Event of Default, Unit Owner shall have the following exclusive remedies, at Unit Owner's option:

4

    a.     Unit Owner may declare that this Lease is terminated whereupon the right of Operator to the possession of the Premises shall terminate, subject, however to rental bookings then in existence.

    b.     Unit Owner shall have the right to take no immediate action and to hold the Operator responsible for the rent as it becomes due.

    c.     The Unit Owner shall have the right to accept rent from the Operator in an amount less than what is actually due thereby waiving the right to dispute the accuracy of the amount paid or the existence of other defaults.

15.    **Unit Owner's Defaults:**        If Unit Owner shall at any time fail to make any payments to its mortgagee, if any, or shall fail to make any other payment or perform any other act on its part to be made or performed, then and in said events, Operator, after Fifteen (15) Days notice to Unit Owner (without notice in case of an emergency) and without waiving or releasing Unit Owner from any obligation of Unit Owner contained in this Lease, may (but shall be under no obligation to) pay any amount payable by Unit Owner pursuant to the provisions hereof, or perform any other act on Unit Owner's part to be made or performed as in this Lease provided and deduct the same from the next successive rental payments until repaid in full. Upon a repeated failure by Unit Owner to perform either monetary or non-monetary obligations under this Lease, Operator shall have the option of terminating this Lease.

16.    **Right To Notice and Cure:**     Both Parties shall be entitled to written notice of any condition of default from the other party, in the manner required for all notices as well as a reasonable time to cure the condition of default provided that, if the condition of default can be cured by the payment of money, the Party in receipt of said notice shall pay the required sum without prejudice to its right to contest the claim.

17.    **Waiver of Jury Trial: EACH PARTY WAIVES TRIAL BY JURY IN ANY LITIGATION HEREUNDER.**

18.    **Indemnification:**       Without limiting any other indemnities articulated herein, the Parties hereby agree to indemnify and hold each other harmless against and from all liabilities, liens, suits, obligations, fines, damages, penalties, claims, costs and expenses, including reasonable attorneys' fees, by or on behalf of any person or which may be imposed upon or incurred by or asserted against a Party hereto by reason of any act or omission on the part of the other Party or its agents.

19.    **Right of First Refusal:** During the initial and extended term of this Lease, Operator shall have the right of first refusal to purchase the Premises from the Unit Owner upon the same terms and conditions as are contained in any bona fide offer received by and acceptable to the Unit Owner from any third party (the "Offer"). Upon receipt of an Offer by Unit Owner, Unit Owner shall, within five (5) days from receipt of said Offer, provide to Operator an exact copy of the Offer. Thereafter, Operator shall have Ten (10) days after receipt of the copy of the Offer to provide to Unit Owner a written exercise of this right of first refusal. In the event Operator fails to exercise this right of first refusal, Unit Owner shall be free to consummate the transaction contained in the Offer provided to Operator; provided, however, that in the event any of the material terms and conditions of the offer are changed, including but not limited to items of seller financing or a change in the identity of the Buyer, Unit Owner shall be obligated to repeat the procedure set forth in this paragraph. In the event the transaction is not completed within Sixty (60) Days of the closing date contained in or gleaned from the Offer, Unit Owner shall be obligated to repeat the procedure set forth in this paragraph before Unit Owner shall be entitled to conclude a sale on the basis of the Offer.

20.    **Option to Extend Term:**      At the option of Operator, this lease may be extended under the same terms and conditions as are embodied herein provided that Operator provides notice of its election to renew on or before three (3) months from the end of this initial term, and, provided that the base rent for the extended term is 110% of the rate articulated herein. Unless otherwise agreed to by the Parties, the renewal period shall be for three (3) years. Notwithstanding the foregoing, Unit Owner shall have the right to terminate this Lease after the term and prevent Operator from exercising this Option to Renew by paying to Operator an amount equal to three (3) time the annual base rent, in which event Unit Owner shall own the furnishings.

21.    **Miscellaneous:** The parties further agree as follows:

    a.   The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Unit Owner and Operator and their respective heirs, successors. administrators, representatives and assigns.

b.  This Lease and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the state of Florida.

c.  The rights of the Parties to this Lease shall be cumulative, and failure on the part of any Party to exercise promptly any rights given under the terms of this Lease shall not operate to forfeit any of said rights.

d.  Any notice, designation, consent, approval or other communication required or permitted to be given pursuant to the provisions of this Agreement shall be in writing and shall be sent by certified mail, return receipt requested, addressed to the parties at the addresses set forth above. Each party may, by notice given in accordance with the provisions of this subparagraph, designate any further or different address to which subsequent notice pursuant to the provisions of this Lease shall be sent. Any notice shall be effective when mailed.

e.  This Lease shall not be recorded in the Public Records.

f.  This Agreement constitutes the entire agreement and understanding of the parties and supersedes all prior agreements and understandings relating hereto. This Agreement may not be amended or modified except by an instrument in writing executed by the parties hereto.

6

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

| I(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| A&L ATLANTIS, LLC , ET AL. | SPA ATLANTIS MANAGEMENT, LLC, ET AL. |

**03 - 61980**

**MAGISTRATE JUDGE SNOW**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)
**MIAMI DADE COUNTY, FLORIDA**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **BROWARD**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Brian P. Miller, Esq.
AKERMAN SENTERFITT, One SE Third Ave., 28th Floor
Miami, Florida 33131-1714
(305) 374-5600

ATTORNEYS (IF KNOWN)

**CIV-COHN**

Broward 03-61980  CV cohn/ss

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION

(PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES

(For Diversity Case Only)

(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated and Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION

**IVa.** _____ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT     (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | B SOCIAL SECURITY | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | A LABOR | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | A FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus and Other* | | | ☐ 890 Other Statutory Actions* |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | * A or B |
| ☐ 290 All Other Real Property | | * A or B | | | |

## VI. ORIGIN     (PLACE AN X IN ONE BOX ONLY)

- ☒ Original Proceeding
- ☐ Removed from State Court
- ☐ Remanded from Appellate Court
- ☐ Refiled
- ☐ Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A
☐ CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND
In excess of $75,000

☐ Check YES only if demanded in complaint
JURY DEMAND:   ☒ yes   ☐ NO

## VIII. RELATED CASE(S) IF ANY     (See Instructions)

JUDGE _____

DATE **November 5, 2003**

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY:  Receipt No. 391797   M/ifp:   Amount $150.=